1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

VIRGINIA SURETY INSURANCE COMPANY, an Illinois corporation,

    Plaintiff,

vs.

RSUI INDEMNITY COMPANY, a Georgia corporation,

    Defendant.

No. CV 09-928-PHX-JAT

**ORDER**

Pending before the Court is Defendant's Motion to Dismiss (Doc. #14). For the reasons that follow, the Court dismisses this case.

## I. BACKGROUND

The primary insurer here incurred defense costs defending its insured in a road defect case and seeks contribution from the excess insurer for the costs incurred after it tendered its policy limits. In the underlying action, *Donna James, et. al. v. State of Arizona, et.al.,* plaintiff brought a wrongful death action against the State of Arizona, claiming the automobile accident was due to a road defect. The State of Arizona impleaded Meadow Valley Corporation ("MVC"), which had been performing work at the accident location. Compl. at ¶ VII.

Virginia Surety Insurance Company ("Plaintiff") insured MVC under a policy of general liability insurance. After MVC tendered the defense in the underlying action to

Plaintiff, Plaintiff agreed to defend MVC under a reservation of rights. Compl. at ¶ VIII.

RSUI Indemnity Company ("Defendant") insured MVC under a policy of excess liability insurance. Compl. at ¶ X. Plaintiff put Defendant on notice that there was a potential exposure in excess of the limits of the Plaintiff's policy in relation to the underlying action and tendered its policy limits to Defendant in August of 2006. Compl. at ¶ XI. Settlement in the underlying action on MVC's behalf was entered into in June of 2007 in an amount that exceeded the Plaintiff's policy limits. Compl. at ¶ XII. Defendant has acknowledged it had a duty to defend MVC in the underlying action from July 12, 2007 forward because of the exhaustion of the Plaintiff's policy limits by payment of the settlement. Compl. at ¶ XIV. However, Defendant has refused to pay any money towards the cost incurred in providing a full defense to MVC prior to the time Plaintiff paid the limits of its policy of insurance, even though Plaintiff had requested that Defendant share the defense costs on a pro-rata basis. Compl. at ¶¶ XIII, XV.

Plaintiff filed the present suit on May 13, 2009, claiming Defendant had a duty to defend and equitably contribute to the full defense costs incurred in the underlying action. On June 22, 2009, Defendant moved to dismiss Plaintiff's First Amended Complaint for failure to state a claim (Docs. #10, 14).

## II. ANALYSIS AND CONCLUSION

**A.    Defendant's 12(b)(6) Motion to Dismiss**

Defendant has moved this Court to dismiss Plaintiff's First Amended Complaint for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6). To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. At 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B.    Evidence Outside the Complaint**

Defendant has attached both relevant portions of Plaintiff's policy and Defendant's policy as exhibits to its Motion. Def. Exs. A-B. However, absent specific exceptions, the

Court will not consider evidence or documents beyond the complaint in the context of a 12(b)(6) motion to dismiss. *See Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (amended decision). When a party files affidavits and other evidence in support of a 12(b)(6) motion to dismiss, the Court may convert the motion to a FED.R.CIV.P. 56 motion for summary judgment. FED.R.CIV.P. 12. However, if a party objects, generally the Court will not grant a motion for summary judgment before discovery can be completed. *See generally* FED.R.CIV.P. 56(f); *THI-Hawaii, Inc. v. First Commerce Fin. Corp.*, 627 F.2d. 991, 994 (9th Cir. 1980).

There are two exceptions to the general rule cited above from *Hal Roach Studios*, 896 F.2d at 1550. "First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations and citations omitted). "If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity ... is not contested and the plaintiff's complaint necessarily relies on them." *Id.* (internal quotations and citations omitted). "Second, under Fed.R.Evid. 201, a court may take judicial notice of matters of public record." *Id.* at 688-89 (internal quotations and citations omitted).

Defendant argues that the Court may consider the policies attached to its Motion under the first exception, or the "incorporation" doctrine, since the policies were referenced extensively in the complaint.[1] *See United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).

This Court agrees with the Defendant and finds that the policies may be properly considered under the incorporation doctrine without converting the Motion to a motion for summary judgment. Plaintiff does not contest the authenticity of the policies in the Response. Furthermore, the policies attached to Defendant's Motion to Dismiss are

---

[1] At oral argument, Plaintiff agreed that the Court could consider the attached insurance policies in ruling on the present Motion to Dismiss (Doc. #14).

- 4 -

1 necessarily relied upon by Plaintiff in asserting its claim that Defendant had a duty to defend.
2 The policies provided by Defendant in Def. Exs. A-B satisfy the requirements of the
3 incorporation doctrine.

**C.     Language of the Policies**

Plaintiff's Commercial General Liability Policy ("CGLP") required them to pay all "litigation costs taxed against [the insured]." (Doc. #14, Ex. A at 6). The CGLP also provided that "[Plaintiff's] right and duty to defend ends when [they] have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C." (Doc. #16, Ex. A at 2).

Defendants Commercial Excess Liability Policy states in part they " . . . will have a duty to defend such claims or suits when the applicable limit of insurance of the 'Underlying Insurance' has been exhausted by payments of judgments, settlements and any cost or expense subject to such limit." (Doc. #14, Ex. B at 6).

Based solely on the language of the policies, it appears that both policies agree that Plaintiff's policy limits are exhausted only through payment of judgments or settlements, which did not occur in this case until July 12, 2007.

**D.     Plaintiff's Equitable Contribution Claim Must be Dismissed**

Plaintiff argues that Defendant has an equitable duty to share equally in the cost of defending MVC in the underlying action regardless of whether the Plaintiff's policy limits have been exhausted. Plaintiff further argues that it told Defendant of the potential exposure to the excess layer and formally tendered policy limits to Defendant in August of 2006. As a result, Plaintiff therefore claims it is entitled to a pro-rata contribution from Defendant for the defense costs prior to the date Plaintiff paid its policy limits, since Defendant owed an excess duty to defend MVC.[2]

---

[2] Based on the language of the First Amended Complaint, it appears that Plaintiff was seeking to split the defense costs in the underlying action from day one. However, at oral argument Plaintiff conceded that they would not be entitled to a contribution of defense costs from day one, but rather from the date of the alleged tender of policy limits to Defendant in

- 5 -

Defendant, however, argues that equitable contribution is inappropriate for two reasons. First, it argues Plaintiff was obligated to pay defense costs consistent with its and Defendant's insuring policies when Plaintiff contracted to pay all "litigation costs taxed against [the insured]" until such a time its limits became exhausted. Defendant argues the costs sought were incurred prior to exhaustion of Plaintiff's policy limits; and therefore, are Plaintiff's sole responsibility. Second, Defendant argues that the doctrine of equitable contribution does not hold an excess insurer liable to a primary insurer for defense costs because the excess insurer insures at a different level of risk. As discussed below, Plaintiff's equitable contribution claim fails.

The equitable "contribution theory is based upon the equitable principle that where two companies insure the same risk and one is compelled to pay the loss, it is entitled to contribution from the other." *Indus. Indem. Co. v. Beeson*, 132 Ariz. 503, 506, 647 P.2d 634, 637 (App. 1982) (internal quotations and citations omitted). "Equitable contribution is the right to recover, not from a party primarily liable for the loss, but from a co-obligor or co-insurer who shares *common liability* with the party seeking contribution." *U.S. Fid. & Guar. Co. v. Fed. Rural Elect. Ins. Corp.*, 37 P.3d 828, 832 (Okla. 2001) (emphasis added). "The doctrine applies only when co-insurers have covered the same insured and the same particular risk at the same level of coverage." *Id.*

This Court's analysis must start with the language of the policies. In this case, they are in harmony with one another. As noted earlier, the primary policy provides that the insurer's duty to defend ". . .ends when we have used up the applicable limit of insurance in the payment of judgments or settlements. . ." Likewise, the excess policy provides that its duty to defend arises ". . .when the applicable limit of insurance of the 'Underlying Insurance' has been exhausted by payments of judgments, settlements and any cost or expense subject to such limit."

---

August of 2006. Regardless which date is used, the equitable contribution claim must be dismissed.

- 6 -

The harmony of these two policies in this case coincides with the well recognized legal relationship between primary and excess insurers generally. An excess insurer insures a different level of risk than the primary insurer. Primary insurance generally has the first duty to indemnify and defend the insured. *See Am. Family Mut. Ins. Co. v. Cont'l Cas. Co.*, 200 Ariz. 119, 121, 23 P.3d 664, 666 (App. 2001). In contrast, an excess insurer's duties to indemnify and defend under the terms of the policy are normally not triggered until all applicable primary insurance has been exhausted. *Id.*

Excess insurance is meant to insure catastrophic losses at a modest premium. *St. Paul Fire and Marine Ins. Co. v. Gilmore*, 168 Ariz. 159, 162, 812 P.2d 977, 980 (1991)(internal citations omitted); *See also Hartford Acc. & Indem. Co. v. Cont'l Nat'l Am. Ins. Companies*, 861 F.2d 1184, 1187 (9th Cir. 1988); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 138 (Tex. Ct. App. 1997) ("The remote position of the excess [insurer] greatly reduces its chance of exposure to a loss, and therefore, an excess [insurer] charges lower insurance premiums."). As a result, while two primary insurers or two excess insurers may have a right to equitable contribution against each other, generally no such right to equitable contribution will exist between a primary and excess insurer because "they are covering separate and clearly defined layers of risk." *Nat'l Union*, 955 S.W.2d at 138; *See also U.S. Fid. & Guar. Co. v. Fed. Rural Elec. Ins. Corp.*, 37 P.3d 828, 832 (Okla. 2001).

Notwithstanding the foregoing, Plaintiff argues *Columbia Cas. Co. v. U.S. Fid. & Guar. Co.*, 178 Ariz. 104, 870 P.2d 1200 (App. 1994) supports application of the common law theory of equitable contribution to a dispute between a primary and excess insurer when it is apparent the primary insurance will be inadequate. In that case, Columbia Casualty Company ("CC"), sued the primary insurer, U.S. Fidelity & Guaranty Company ("USF&G"), for all defense costs after CC undertook USF&G's defense. USF&G had previously unsuccessfully third partied an engineering firm into the litigation and suffered a $75,000 attorneys fee award. It treated this amount as payment of insurable damages. By adding that sum to earlier payments under the policy, USF&G claimed its payments exceed its $100,000

limits. It is not clear what type of tender followed, but CC undertook defense of the action and effectuated a settlement for $287,500. The trial court was affirmed in holding that the $75,000 amounted to costs of defense and not a liability payment and that USF&G therefore had not exhausted its policy limits. The trial court then pro-rated the payments of defense costs based on the proportion of liability payments made by each insurer.

The Arizona Court of Appeals held "on the facts of this case that apportionment of costs based on liability payments is the proper rule." *Id.* at 106. This result was based on the fact that, from the start of the litigation, it was apparent to both insurers that the primary limits would be inadequate, and one would "expect the insurers to work together to minimize the amount of the settlement and the amount of fees and costs incurred before settlement." *Id.* The Court of Appeals also added in the costs and fees incurred by the excess insurer before exhaustion in determining the total amount to be apportioned between the two insurers. The court, therefore, adopted a rule that "*in these circumstances* ought to encourage joint action rather than contribute to the hope that one insurer might prosper at the expense of the other." *Id.* (emphasis added).

Plaintiff in effect asks this Court to read *Columbia Casualty* as announcing a general rule of equitable contribution between a primary and excess insurer. This Court chooses not to and holds that *Columbia Casualty* should be limited to the facts before that court. Indeed, the Court of Appeals does not purport to announce such a new rule, nor even discuss the cases allowing for equitable contribution that would be overruled. Interestingly, the *Columbia Casualty* court also makes no reference to the policy language, a starting point in most coverage analyses. Perhaps this was because the primary policy was deemed not exhausted. Nonetheless the excess insurer undertook the defense and waited until trial to raise the non-exhaustion issue as opposed to simply rejecting the tender (if there was one) on those grounds. Therefore, the *Columbia Casualty* court was faced with a primary insurer whose duty to defend had not terminated (since it had not exhausted its policy limits) and an excess insurer who in essence had become a volunteer by undertaking a defense obligation

that had not yet ripened (assuming the policies contained language similar to those in this case).

*Columbia Casualty* represents an exception to the usual rule limiting the application of equitable contribution to insurers at the same level. To treat *Columbia Casualty* as announcing a new rule of contribution that excess insurers were required to equitably split defense costs with primary insurers, regardless of exhaustion, would destroy the very essence of excess insurance. "[A]n excess insurer predicates the premiums it charges upon the obligations that it and the primary insurer assume, including the primary insurer's obligation to defend all suits until exhaustion of its liability limits." *Hartford Acc. & Indem. Co. v. Cont'l Nat'l Am. Ins. Companies*, 861 F.2d 1184, 1187 (9th Cir. 1988). Therefore, equity should not require the Defendant to pay a portion of the defense costs because it has not received a premium for undertaking that coverage. *Id*. There is no doubt that primary and excess insurers can "alter their coverages and correspondingly adjust their premiums[,]" but neither party did so in this case. *Id.* As stated above, excess insurance is meant to protect the insured from catastrophic losses at a low premium. *St. Paul Fire and Marine Ins. Co. v. Gilmore*, 168 Ariz. 159, 162, 812 P.2d 977, 980 (1991)(internal citations omitted); *See also Hartford*, 861 F.2d at 1187 (9th Cir. 1988).

Plaintiff also relies on *Signal Cos. v. Harbor Ins. Co.*, 27 Cal.3d 359, 612 P.2d 889 (Cal. 1980) to show a bright line rule is not appropriate. In *Signal*, the court refused to adopt a definitive rule that applied to every case "in light of varying equitable considerations which may arise" between the primary and excess insurers duties. *Id.* at 370, 612 P.2d at 896. The Court agrees that there may be circumstances in which compelling equitable considerations might be considered; for instance, when the excess insurer is not a "true excess" insurer, but rather one of two primary insurers that takes on excess status due to various contractual provisions, such as an "other insurance" clause. *See Regal Homes, Inc. v. CNA Ins.*, 217 Ariz. 159, 169, 171 P.3d 610, 621 (App. 2007). Even under those circumstances, it may not be appropriate for equitable contribution, but we need not address that issue here. It is

undisputed by the parties and the policy provisions that Defendant is a "true excess" insurer, and for that reason the Court does not find a compelling equitable consideration. Another reason it is difficult to accept equitable contribution as a valid legal theory for defense costs between a primary and excess insurer is the difficulty in determining when sufficient evidence exists that the claim is likely to exceed primary policy limits, which would in turn trigger the excess insurer's equitable contribution. Such a rule would leave too much to the discretion of the court and would produce conflicting results due to the inherent arbitrariness in deciding if there was adequate evidence that primary policy limits would be exhausted.

**E.  The Primary Policy Was Not Exhausted and Defendant's Duty to Defend Did Not Arise Before Payment of the Settlement on July 12, 2007 That Exhausted Primary Coverage**

An insurer's duty to defend is derived from the language of the insurance policy. *California Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 165, 168, 913 P.2d 505, 508 (App. 1996) (internal citations omitted). Based on the language of both policies in the present case, the Defendant's duty to defend was not triggered until the primary policy limits had been exhausted <u>by payment of settlement or judgment</u>. Def. Ex. B.

This Court must next decide whether primary policy limits are exhausted when the primary insurer merely tenders its policy limits to the excess insurer. If a tender of policy limits to the excess insurer qualifies as exhaustion, then Defendant's duty to defend would have been triggered and Plaintiff could recover all of its defense costs after the tender. Plaintiff alleges they made a formal tender of policy limits to Defendant in August of 2006. Compl. at ¶ XI. For the reasons discussed below, Defendant's duty to defend did not arise until the payment of the settlement on July 12, 2007.

Plaintiff contends that tendering policy limits to the excess carrier qualifies as exhaustion of primary coverage. *See Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 256, 63 P.3d 282, 287 (2003) ("[u]ntil a primary insurer offers its policy limit, the excess insurer does not have a duty to evaluate a settlement offer, to participate in the defense, or to act at all."). However, *Twin Cities* involved an excess insurer bringing a bad faith claim against a primary

insurer and did not discuss policy language regarding the duty to defend. This Court interprets *Twin Cities* to stand for the proposition that an excess carrier's duty cannot arise any *earlier* than a tender of policy limits, but does not stand for the proposition that the duty to defend is *triggered* at the tender.

While Plaintiff alleges it made a tender of policy limits to Defendant in August of 2006, Plaintiff acknowledged at oral argument that this "tender" did not include a check or some other form of payment. Since the policies expressly provide that the primary insurer's duty to defend is concluded only upon payment (of settlements or judgments) and the excess insurer's duty to defend commences only upon payment (of judgments or settlements), this Court concludes that the primary insurer failed to exhaust its limits until payment of the settlement, and the excess insurer incurred no duty to defend until that payment.[3] This might have been a closer question had the primary insurer, for example, accompanied its "tender" with a check payable to the excess insurer, and even closer if it also accompanied the check with evidence it had attempted to settle with the claimant for the policy limits, but to no avail.

Indeed, in at least a few cases, the primary insurer was able to "settle" with the plaintiff by paying its policy limits in return for a covenant by plaintiff not to execute on the individual assets of the insured and this was held to constitute exhaustion. *Cont'l Cas. Co. v. Farmers Ins. Co. of Ariz.*, 180 Ariz. 236, 237-38, 883 P.2d 473, 474-75 (App. 1994) (holding that a primary insurer exhausted policy limits by paying their limits in return for a covenant not to execute against the insured, but stating "an insurer's tender of policy limits does not end its duty to defend absent a judgment or settlement."). *See also California Cas. Ins. Co. v. State*

---

[3]This Court would note that the wording of these policies does present a rather anomalous situation in which the duty to defend terminates (or commences as to the excess insurer) only upon payment of a settlement or judgment. If the primary insurer is able to "settle" with the plaintiff, the case is over and no defense lies ahead for the excess insurer. Likewise, if the primary insurer pays a judgment, the case is also over. Other than the situation involving a covenant not to execute, it is hard to imagine other scenarios in which exhaustion can occur by payment of a settlement or judgment, and an excess insurer must still step in and go forward with the defense. These issues are obviously beyond what is before this Court.

*Farm Mut. Auto. Ins. Co.*, 185 Ariz. 165, 168, 913 P.2d 505, 508 (App. 1996) ("[P]ayment of [primary insurer's] full policy limits discharges its duty to defend a claim against the insured *only* if made pursuant to a settlement or in full or partial satisfaction of a judgment entered on the claim against the insured.")(internal citations omitted). However, there was no attempt by Plaintiff to secure a covenant not to execute after Defendant refused to accept the tender.

Accordingly,

**IT IS ORDERED** Granting Defendant's Motion to Dismiss (Doc. #14) in all respects.

DATED this 24th day of November, 2009.

James A. Teilborg
United States District Judge